v. Adams & Brooks, Inc. v. Adams & Brooks, Inc. Okay, our last argument this morning is Morris National, Inc. v. Adams & Brooks, Inc., docket number 14-1224. Mr. Gibson, whenever you're ready. Thank you, Your Honor. May it please the Court, Elliot Gibson of Fayette-Gibson for Appellant Morris National, Inc. This case is about the burden of proof in a cancellation proceeding. The burden of proof, it's not disputed, it should be, as the Board said, a preponderance of evidence standard. The question here is whether the prior user rule impermissibly shifts that burden of proof from the plaintiff onto the defendant. If we conclude that the TTAB's analysis here and all of its fact findings and ultimate conclusion that there was confusion did not rely on the prior user doctrine, but then just sort of said it after it reached its conclusion, sort of like a cherry on top, then the prior user doctrine really isn't implicated in this case. Is that right? Yes, I would agree that if they just said it after the fact that it didn't have any meaning, they just put it out there as a cherry on top, then it's not implicated in the case. But they did say it. I assume they said it for a reason, and it's impossible to tell when reading the opinion if that affected their judgment in every single case. I mean, not just making the findings of fact for each individual DuPont factor, but also the weighing of everything. That if you have in the back of your mind the tie goes to the so-called senior registered mark, then every time you're looking at the similarity of the marks, the channels of trade, every single DuPont factor, you put your thumb on the scales. And that's not what's supposed to happen, particularly where there's a registered mark that has the presumption of validity, and that's a statutory presumption of validity, 15 U.S.C. 1057. Nuttall's is entitled to that statutory presumption. It went through the process that it was supposed to. It applied to the examining attorney at the USPTO and did their own search. There's no likelihood of confusion, no one opposed. They started using the mark in commerce. They spent a lot of capital doing that, and they're entitled to that presumption of validity. Even if you don't think that the prior user rule is implicated, you still have to look at each of the factors. One of the major points here is the marks themselves. The error in analysis that the board made when they compared pea nuttalls and nutfulls by chopping off the pea. If you look at their analysis, they spent a lot of time. Well, if you look at nuttalls and nutfulls, disregarding the pea, they're very similar. Well, you can't disregard the pea. It's the pea slash nuttalls, pea nuttalls. That impermissibly is looking at the marks in part, and they're not allowed to do that. That's an error of law, regardless of whether or not they're putting their thumb on the scales with the prior user rule. Mr. Gibson, you make a lot of argument about the boards refusing to amend the identification of goods and the distinctions in the channels of trade and class of consumers. Don't you run into a problem here because the other registration and issue has a very broad identification of goods? Namely, simply nut candies. Yes, Your Honor. And under well-recognized principles, when you're dealing with registrations, you have to give that identification of goods its full scope, and that encompasses whatever channels of trade might be appropriate for nut candies, regardless of what they might be. Yes, Your Honor, and I acknowledge that is what TTAB precedent says. There is a factual record that shows, although there might be some overlap, there are different channels of trade, so they're not identical. But that amended registration is important for a different reason, and it goes back to the similarity of the marks. When you look at what the mark is supposed to mean, you have to look at it with both the mark and what its description is. And the amended description, which is chocolate, namely premium Belgian chocolate truffles, when you have that, truffles with nutfuls, it's going to connote truffles. And when you have that, there's not going to be...it has a very different connotation than peanuts, which I think is the primary connotation you have with peanuts. Now, the other side spent a lot of time saying that peanuts is a totally fanciful, made-up mark. They didn't admit that it even used peanuts. They had no explanation for what the mark meant, but obviously when used with nut candies, the connotation is peanuts, or at least it's nuts. And the board found that the primary similarity of that mark, it's nut. And nut is a descriptive or even generic term, especially when used for nut candies. It can't be that... Nutfuls. There are nuts in it, but... There's an overlap of nuts here. There's an overlap of nuts, but I would submit that the consumer, you walk into a store, you see peanuts, and it's a nut candy, and you see nutfuls, it's a chocolate truffle. Let's not forget what the DuPont analysis is supposed to be. Well, it's a chocolate truffle with a nut. It's a chocolate truffle with a nut. I mean, I understand your argument about dissecting the marks and particularly eliding the P, but the fact of the matter is they both talk about nut candy. And yours, they both have the word nut in them, and apart from the fact that you've made all these arguments that yours are higher-end and stuff, that's not in your registration. It's just about whatever. It didn't say luxury high-end chocolate nut candy. It just said what it said. There are a lot of marks. The record shows that the board wasn't particularly impressed with the number of marks that have nut in them that are candies, but it can't be that Adams & Brooks can take nut out of the realm of candies. I mean, it's purely descriptive, and if you look at the prior user rule, this whole thing kind of developed. The earliest kind of somewhat application of it is that Listerine case, which was the 1950 case, 1915 Lambert versus Bolton. In that case, the prior mark was Listerine. The newcomer was Listogen, and that case said you have to resolve the doubt in favor of Listerine. A judge learned a hand from that. But in that case, the marks were arbitrary. The senior mark was famous, and there's evidence of bad faith, and those are two important points here. The board has found that Peanuttles is not famous. They've explicitly found there might be some consumer recognition over its many years, but there's no evidence that it was actually famous, and moreover, there's no evidence of bad faith here. And when you have two small companies making candies that have a descriptive term in it, nut, it can't be that the burden is on the defendant or the junior user after they have the registration, after they've spent capital, that somehow they have to prove that they haven't infringed. When you use the prior user rule, it's too much. It impermissibly shifts the burden. And the last thing I'd like to get to is the weigh-in of the factors. Now, the board doesn't have to set out every single DuPont factor, but the DuPont factors that it does set out, you're entitled to re-weighting. And I submit that if you amend the registration so that it's chocolate, namely premium chocolate truffles, that gives the meaning, Nutful's very clear meaning, that it means nuts and truffles, and that's different, it's not going to lead to confusion. And at the end of the day, that's what we're here to do. It's not to protect some abstract notion, it's to make sure that consumers are not going to be confused. How do you get around the Palisades opinion from the CCCA, which seems to strongly state that denials of motion to amend the goods and services is not something that this court can review? It is directly related to this appeal. The facts are all the same, and you can reverse or amend. We could do a motion for reconsideration after that. But it's the exact same facts that are here, I think, in our brief. We talk about it, but that's an issue to consider. But I think that's something for the TTAB to consider after this is reversed. My time is up. Okay, we'll reserve the remainder of your rebuttal time. Thank you. Thank you. Good morning, Your Honors. Sam Ebrahimi here on behalf of Adams & Brooks. May it please the Court. We respectfully request that this Honorable Court affirm the decision of the Trademark Trial and Appeal Board, which correctly concluded that, in this case, Adams & Brooks' mark and Morris National's marks are confusingly similar. We'd like to point out that our client's mark, P. Nuttles, is incontestable. It's been in use for a long, long time, over 40 years, and the standard isn't you have to have a famous mark in order to be protectable. It's that you're entitled to protection against confusingly similar marks. With respect to the burden of proof, we're pleased that opposing counsels conceded the Board applied the proper burden of proof in this case, which is preponderance over the evidence. Burden of proof is identical in an opposition and in a cancellation proceeding. Contrary to the appellate's arguments in their briefs, the Board didn't apply the incorrect burden of proof. They rely upon an outdated case, W. D. Bryan & Sons v. Stein Brothers, which has been heavily criticized by subsequent cases. It's basically invalid law. There's nothing in the Lanham Act to state there's any different burden of proof between an opposition or cancellation. What about this prior user doctrine? Does that really fit in a cancellation context where there's a presumption of validity for the junior mark? Your Honor, I think that they're mixing apples and oranges. The prior user doctrine is invoked by the trademark trial and appeal board, which in this case, it wasn't invoked in analysis of the likelihood of confusion factors. But where it is invoked, the board and courts have looked at it and said, this is a close call. In this close call, we have close cases. We're entitled to invoke the prior user rule to say that we're going to give the prior user the benefit of the doubt. So if it's kind of 50-50, then all of a sudden the prior user doctrine kicks in, and now it's 51-49, and now the presumption of validity is gone? It's not the presumption of validity. The presumption of validity is intact. Well, you've met your burden of proof by preponderance of the evidence when the evidence actually was in equipose? Well, Your Honor, you could look at it that way. The case that I think is on point here is that it's the Emory Majestic Stealing Company case, which this court affirmed, which requires – which states – excuse me, it's not the Majestic Stealing case, pardon me. I would say it's 50-50, but that's one way to look at it, Your Honor. It's the Century 21 case, excuse me, where this board said – it's an example of the board applying the prior user rule where it says that we can apply it in difficult cases to resolve, but this isn't a 50-50 case. This isn't even a close case. The board methodically went through all of the factors, and in each of the factors, it never once said we're applying the prior user rule to rule in favor of Adams and Brooks. It was clear when you look at the factors that there was a likelihood of confusion here, Your Honor. And so whether you want to quantify this 50-50, 51-49, I guess you can. But if the case law looks at it as difficult cases to decide, and therefore, they rely on the prior user rule. It looks like the trademark board pretty quickly dismissed the P-dash and P-nuddle. Well, Your Honor, with that point, you have to look at the marks in their entirety in terms of the similarity. In our case here, these are the only two marks that contain the terms, not an LES. There are no other third-party marks other than this obscure Nuttall's mark, which the president of the other side said, I'd never heard of it before until doing some research here. And so if you look at the marks in their entirety, they're still confusingly similar. It's similar to this court's ruling in the begging strips versus wagging strips case, which is the Midwest Pet Foods case. There, you had parts of the mark which were arguably descriptive strips, but the court still found a likelihood of confusion because of the other DuPont factors. Here, products are identical. Despite arguments to the contrary, the evidence shows that these are low-cost impulse purchasing products sold in the same stores. The evidence shows that in some cases, we are carried in the identical stores. I'll point the court to the record with respect to A-599 and A-289 and A-290. They're both sold in A.J. Wright's stores, Dairy Fresh stores, Sherm's Thunderbird stores, so our products are there in the same aisles together. So when you look at low-cost impulse products, that increases the likelihood of confusion. If you look at the channels of trade in classes of consumers, there's no restrictions on it whatsoever. So they're presumed to travel in the same channels of trade as the board said, which they do. That heavily favors a likelihood of confusion. If you look at the – Do you think this court can review the denial of the motion to amend the business services here? We don't believe the court should review it, Your Honor, for two reasons. One is based on the case law. And two, Your Honor, if you look at what the board said, it said even if we allow it, it has no impact. It would be an immaterial modification because there would still be a likelihood of confusion because A, Adams & Brooks registration doesn't contain any restriction on the products. It just says nut candies. That is to encompass everything. So the board decisions on motions to amend, whether to deny or grant, is totally at their discretion, totally unreviewable? I don't know if I would go that far, Your Honor. I think when the board properly considers the motion to amend, Your Honor, and says that it would be immaterial to the decision, we'd request that the court not overturn or disturb that decision. If the board had come out that we reject it without even considering the impact on the case, I think that would be a little different, Your Honor. But here, the record belies the request for the amendment. They say they have this premium chocolate product. That's not in the record. There's no premium chocolate product. They're low-priced products. Second of all, there's no restriction on our client's products in the registration. The cornerstone is looking at the face of the registration of both parties and seeing if there's a likelihood of confusion. Clearly here, there is a likelihood of confusion based on all of those factors. And going back to the prior user rule, it has no impact here. The board mentioned it merely in passing in the final paragraph of the decision, as the board often does, to say we could rely on this if we wanted, but they never once relied upon it in the analysis of the likelihood of confusion factors. Accordingly, we respectfully request that this honorable court affirm the decision and refuse registration of Morris National's trademark. Thank you. Thank you. Mr. Gibson. Thank you. Let me address a few things. One, if the prior user rule wasn't applied in this case, why did they say it? And if they did say it, I think you have to take it seriously that it was applied. And opposing counsel seemed to suggest that, yes, the prior user rule did in fact shift the burden of proof. I don't think that's the case. But even if that were the case, and even if the prior user rule was something that was permissible, it shouldn't be used in this case where there's not a famous mark and there's no evidence of that faith. Second of all, with respect to the other marks, nuttables, it was mentioned that the president of Morris National never heard of it. That's true. It's a small mark. But the president of Morris National also never heard of pea nuttables before this case. So that goes, again, to show we're talking about small candy companies, small marks. They're not famous. Lastly, I'd like to address the bagan strips versus wagon strips. When you're looking at likelihood of confusion, you get the case law. You can look at these marks were found to be similar. These marks were found not to be similar. It's hard to tell exactly what they based their decisions on. But with respect to bagan strips and wagon strips, there's a part of the mark that strips which is descriptive. But then bagan and wagon, that's suggestive of dog behavior in the same way. Here what we're talking about is nuttables and pea nuttables. And all they're suggestive of are nuts, and actually not even suggestive. They're descriptive of nuts. Finally, there's no finding on the record that shows that these are low-cost impulse buys. That's not a finding that the board made. And if you have any further questions, I'm happy to answer them. If not, we respectfully request this court reverse and remand. Thank you very much. The case is submitted, and that's the end of the arguments for this morning. Thank you. All rise.